# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY BOYCE (# R-52162), | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 12 C 5372** |
| | ) | |
| IMHOTEP CARTER, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Anthony Boyce ("Boyce"), who is currently incarcerated at the Pontiac Correctional Center ("Pontiac"), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. Boyce contends that dentists Jacqueline Mitchell-Lawshea ("Dr. Mitchell") and Michelle Brown ("Dr. Brown"), physician Imhotep Carter ("Dr. Carter"), and psychiatrist Jonathan Kelly ("Dr. Kelly") were deliberately indifferent to his serious dental needs while he was housed at the Stateville Correctional Center ("Stateville"). Before the Court are a motion for summary judgment filed by Dr. Mitchell and a joint motion for summary judgment filed by Dr. Brown, Dr. Carter, and Dr. Kelly.[1] Defendants bring both motions pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the motions are granted.

---

[1] With respect to other Defendants remaining in this case, the Clerk is directed to terminate defendant "John Doe Dentist" as this individual is defendant Michelle Brown. (R. 55.) The Clerk is also directed to terminate "Dr. Brown" as a defendant as there is no need to name Dr. Brown twice. This leaves Dr. Mitchell, Dr. Carter, Dr. Kelly, and Dr. Brown, all of whom have moved for summary judgment. *See* R. 7 (dismissing Defendants P. Ghosh, John Doe Psychiatrist, Louis Shicker, Mark Hale, Salvador Godinez, Marcus Hardy, S. Sanders, Sarah Johnson, Colleen Franklin, and John Doe Medical Director); R. 200 (granting Boyce's motion to dismiss Defendant Saleh Obaisi).

# BACKGROUND

## I.     Northern District of Illinois Local Rule 56.1

Because Boyce is a pro se litigant, Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required by Local Rule 56.2.  (R. 173 and 178.)  The notices explained in detail the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Local Rule 56.1(a)(3) requires a party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law."  *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing L.R. 56.1(a)(3)).  Under Local Rule 56.1(b)(3), the nonmoving party then must submit a "concise response" to each statement of fact, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon."  L.R. 56.1(b)(3)(B).  The  nonmoving party may also present a separate statement of additional facts that requires the denial of summary judgment.  *See* L.R. 56.1(b)(3)(C); *see also Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

"When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by [Local Rule 56.1], those facts are deemed admitted for purposes of the [summary judgment] motion."  *Cracco*, 559 F.3d at 632.  Thus, district courts disregard Local Rule 56.1 responses that do not cite specific portions of the record or that contain irrelevant information, legal arguments, conjecture, or evasive denials.  *See id*.; *see also*

*Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006); *Bordelon v. Chi. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000).

A plaintiff's pro se status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). Boyce is an experienced pro se litigant as this action is one of seven pending lawsuits Boyce has filed in this district about the conditions of his confinement at Stateville. *See Boyce v. Gray*, No. 13 C 2967; *Boyce v. Godinez*, No. 12 C 3840; *Boyce v. Carter*, No. 12 C 5372 (this action); *Boyce v. Obaisi*, No. 13 C 5746; *Boyce v. Martella*, No. 13 C 6526; *Boyce v. Johnson*, No. 6832; *Boyce v. Doe*, No. 14 C 418. Nevertheless, given his pro se status, the Court will construe his filings liberally. *See Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014).

Boyce's objections to facts based on relevancy are overruled as the Court, not the parties, decides what facts are relevant for purposes of summary judgment. *See Timothy & Thomas LLC v. Viral Genetics, Inc.*, No. 06 C 1813, 2010 WL 3155972, at *3 (N.D. Ill. Aug. 10, 2010). Similarly, the Court will disregard unresponsive, evasive, or argumentative denials, so the corresponding facts are deemed admitted. *See Flores v. Giuliano*, No. 12 C 162, 2014 WL 3360504, at *2 (N.D. Ill. July 9, 2014); *Bennett v. Unitek Global Serv., LLC*, No. 10 C 4968, 2013 WL 4804841, at *3 (N.D. Ill. Sept. 9, 2013).[2]

---

[2] For an example of an improper denial, paragraph 8 of Dr. Mitchell's statement of facts states that she "scheduled [Boyce] for fifteen different dental appointments between February of 2011 and August of 2013" and in support cited to portions of Boyce's deposition relating to those appointments. (R. 179, Mitchell's Rule 56.1 Stmt. Facts, ¶ 8.) Boyce denies this statement based on his assertion that he was "treated horribly." (R. 194, Boyce's Resp. to Mitchell's Rule 56.1 Stmt. Facts, ¶ 8.)

Next, Boyce repeatedly states that Defendants' facts do "not tell the entire story" and, in support, directs the Court's attention to unresponsive statements in his declaration (R. 194, Boyce's Resp. to Mitchell's Rule 56.1 Stmt. Facts, ¶ 16) or his second amended complaint, declaration, and exhibits, with no pinpoint citations or explanation (*Id.* ¶ 25). He also denies facts based on his contention that he "allege[d] everything in his second amended complaint and exhibits 2-187 in support of his case with his declaration." (R. 199, Boyce's Resp. to Carter, Kelly and Brown's Rule 56.1 Stmt. Facts, ¶ 11). These types of responses are insufficient to deny the facts in question. *See* L.R. 56.1(b)(3)(B). Thus, when Boyce has made this type of general denial in response to the Defendants' facts, the corresponding facts are deemed admitted to the extent they are supported by the record.

In addition, the Court will consider assertions in Boyce's declaration to the extent that they expand or clarify Boyce's deposition testimony. *See, e.g., Quinlan v. Elysian Hotel Co. LLC*, 916 F. Supp. 2d 843, 849 (N.D. Ill. 2013). Where Boyce's deposition and declaration directly conflict, however, the deposition controls. *See id*.

Finally, Boyce's responses to the two summary judgment motions include lists entitled "Plaintiff[']s statement of disputed factual issues." (R. 199, Resp. Carter, Kelly and Brown, pp. 11-15; R. 194, Resp. Mitchell, pp. 5-6.) These statements consist of lists of open ended questions, such as "whether Carter relied on the professional judgment of his dental staff" (R. 199, p.12) and "whether Defendant Mitchell had good intentions in providing plaintiff adequate dental care" (R. 194, p. 5). The Defendants objected to Boyce's purported additional facts but nevertheless responded to them pursuant to L.R. 56.1(a). (R. 204, 209.) The Court will not consider Boyce's alleged additional facts because even when they are construed broadly, they

are not "statement[s], consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(C). With these standards in mind, the Court turns to the facts.

## II.    Relevant Facts

Boyce is in the custody of the Illinois Department of Corrections ("IDOC"). (R. 176, Carter, Kelly and Brown's Stmt. Facts, ¶ 1.) Although he is currently incarcerated at Pontiac, this case is based on dental care he received when he was housed at Stateville. (*Id.*) Dr. Mitchell and Dr. Brown are dentists whom IDOC and Wexford Health Services, respectively, employed. (*Id.* ¶ 3; R. 176, Carter, Kelly and Brown's Stmt. Facts, ¶ 2.) Dr. Carter is a physician employed by Wexford Health Services who was also Stateville's Medical Director from July 2011 to May 2012. (R. 176, Carter, Kelly and Brown's Stmt. Facts, ¶ 4.) Dr. Kelly is a psychiatrist employed by Wexford Health Services. (*Id.* ¶ 3.)

### A.    Boyce's Allegations About His Dental Care

Boyce's dissatisfaction with the dental care he received at Stateville began in August 2008, when he alleges that an unknown dentist examined him using unsterilized equipment.[3] (Dkt. 112, Sec. Am. Compl., ¶ 1.) IDOC transferred him to a different IDOC facility, where he "began to feel discomfort in his mouth." (*Id.* ¶¶ 3-4.) In 2009, he returned to Stateville, where he experienced pain in his gums and teeth. (*Id.* ¶ 6.) At an unspecified point in 2009, he wrote Dr. Mitchell requesting treatment for cavities and his gums. (*Id.* ¶ 7.)

---

[3] Boyce voluntarily dismissed his claim that Stateville dental staff exposed him to infectious diseases by using unsanitized dental instruments. (R. 158.) The Court will, therefore, not discuss it further.

Boyce asserts that Dr. Mitchell "ignor[ed]" his requests for treatment of his gum issues and cavities and in February 2012, failed to adequately address his complaints of pain. (*Id.* ¶¶ 7, 19, 22.) He also asserts that she said, "I'm not gonna give you pain pills or fillings because when you X-ray a patient it's a form of treatment." (*Id.* ¶ 22.) According to Boyce, his deliberate indifference claim against Dr. Mitchell is based on her alleged failure to address his dental needs quickly enough and the fact that she did not prescribe pain medication. (R. 179, Mitchell's Rule 56.1 Stmt. Facts, ¶ 25.)

In addition, Boyce represents that in September 2011, Dr. Brown refused to see Boyce after a correctional officer relayed Boyce's complaints of dental pain to her. (Dkt. 112, Sec. Am. Compl., ¶ 9.) The following month, Dr. Brown filled some of Boyce's cavities but denied his request to receive pain medication during the procedure to make him needlessly suffer. (*Id.* ¶ 11.) Boyce thus contends that Dr. Mitchell and Dr. Brown provided constitutionally inadequate dental care for "gum disease [which] caused cavities to hurt and form with tooth decay[,] sensitivity[, and] gum swelling." (*Id.* ¶ 7.)

Next, Boyce alleges that during a therapy appointment in October 2011, Dr. Kelly ignored his complaints about dental pain. (*Id.* ¶ 12; R. 197, Boyce Decl., ¶ 11.) Boyce knew that Dr. Kelly was a psychiatrist, not a dentist, so he recognized that Dr. Kelly could not provide dental care. (R. 197, Boyce Decl., ¶ 11.) Nevertheless, Boyce believed that Dr. Kelly "could have had [his] issues addressed" because he "personally could have got [him] seen or requested that [he] be seen or could have dropped a request slip that [he] be seen. He could have [done] something to assist in helping." (R. 176-2, Boyce Dep., pp. 36-37.)

With respect to Dr. Carter, Boyce contends that in January 2012, he complained to Dr. Carter in person about Dr. Brown's dental care. In response, Dr. Carter ignored his complaints, "laughed" at him, and refused to refer him to a specialist despite his acknowledgment that a referral was medically necessary. (Dkt. 112, Sec. Am. Compl., ¶¶ 13, 15.) Boyce further alleges that following this conversation, Dr. Carter said he would meet him in the bullpen with pain medication. (*Id.* ¶ 16.) When Dr. Carter arrived at the bullpen, Boyce asked for his medication. (*Id.*) Dr. Carter responded, "Don't interrupt me when you can see me talking" and ordered him "back to [his] living unit." (*Id.* ¶ 17.)

## B.      Treatment Provided to Boyce During His Incarceration at Stateville

### 1.      Dr. Mitchell

Dr. Mitchell scheduled Boyce for fifteen different non-emergency dental appointments between February 2011 and August 2013. (R. 179, Mitchell's Rule 56.1 Stmt. Facts, ¶ 8.) Boyce received treatment at the dental clinic nine times:

- On October 6, 2011, "various cavities" were filled (presumably by Dr. Brown, who also saw Boyce on this date and filled cavities). (*Id.* ¶ 11.)

- On November 4, 2011, Boyce's teeth were cleaned. (*Id.* ¶ 12.)

- On January 11, 2012, Boyce again visited the dental clinic and "received various fillings and other treatment." (*Id.* ¶ 14.)

- On January 19, 2012, Boyce was diagnosed with gum disease and his teeth were cleaned again. (*Id.* ¶ 15, Ex. C at ¶ 7.)

- On February 2, 2012, Boyce complained about pain and sores during his dental clinic appointment. (*Id.* ¶ 16.) Staff took X-ray images and, although they could not confirm the presence of sores, they referred Boyce to the medical clinic. (*Id.*, Ex. C at ¶ 7.)

- On March 19, 2013, Boyce received a surgical extraction and a filling. (*Id.* ¶ 19.)

- On May 14, 2013, Boyce had another appointment, where he received two fillings. (*Id.* ¶ 21.)

- On June 4, 2013, Boyce's fillings were polished. (*Id.* ¶ 22.)

- On August 5, 2013, after an examination, Boyce's dental work was certified as complete. (*Id.* ¶ 23.)

Boyce was unable to appear at the dental clinic for six of his scheduled appointments due to lock-downs or placement in disciplinary segregation for conduct unrelated to the issues in this case. (*Id.* Ex. C at ¶ 7 (February 16, 2011 and June 29, 2011 appointments), ¶ 13 (November 2011 appointment), ¶ 17 (March 7, 2012 appointment), ¶ 18 (February 2013 appointment), ¶ 20 (May 7, 2013 appointment).[4]

Boyce asserts, without any identifiable basis for his alleged knowledge, that Dr. Mitchell could have called him to the dental clinic during a facility lock-down or when he was in disciplinary segregation to be seen for what Boyce believes were dental emergencies. (*Id.* ¶ 9; R. 197, Boyce Decl., ¶ 22.) He conceded at his deposition, however, that he would defer to a dentist to determine what rose to the level of a dental emergency. (R. 179, Mitchell's Rule 56.1 Stmt. Facts, ¶ 10.)

---

[4] In his declaration, Boyce asserts that he "was at the hospital admitted asking for dental treatment with a fractured tooth on March 15, 2013." (R. 197, Boyce Decl., ¶ 28.) It is unclear if the purported fractured tooth was the tooth that was extracted during the March 19, 2013 appointment. Boyce contends that the purported broken tooth incident creates a disputed issue of material fact because it shows that he missed an appointment because he was hospitalized and thus conflicts with Dr. Mitchell's testimony that he missed an appointment because he was in segregation. The Court disagrees, because none of the appointments Boyce allegedly missed due to his placement in segregation or a facility lockdown were on or about March 15, 2013.

## 2. Dr. Brown

Dr. Brown first treated Boyce on August 25, 2011, when he had an appointment for a biannual dental examination. (R. 176, Carter, Kelly and Brown's Stmt. Facts ¶ 19.) A set of four X-rays revealed that Boyce had cavities, so Dr. Brown scheduled Boyce for a follow-up appointment to fill his cavities. (*Id.*) She also scheduled Boyce for a cleaning by a staff dental hygienist. (*Id.*)

On October 6, 2011, Boyce returned, as scheduled, to have cavities in three of his molars filled. (*Id.* ¶ 20) Dr. Brown asserts that she administered two carpules of 2% Lidocaine, a prescription local anesthetic commonly used in dental procedures, to alleviate any potential pain associated with the dental work. (*Id.*) She filled two of the cavities.[5] (*Id.*) Her progress notes reflect that she administered 2% Lidocaine. (R. 176-3, Brown Decl., at Ex. A attached to Ex. B.)

Boyce does not challenge the dental work that Dr. Brown performed during the October 6th appointment. He asserts, however, that during this appointment, he asked for pain medication to no avail. (R. 197, Boyce Decl., ¶ 10.) Boyce represents that Dr. Brown called him a "clown" and told him that "[his] mouth deserve[d] to hurt" because he had previously asked her to provide emergency dental care. (*Id.*)[6] In support of his contention that he did not

---

[5] The parties do not discuss why Dr. Brown completed two fillings when Boyce was scheduled for three fillings. The unknown reason, however, is not relevant to the issues currently before the Court.

[6] In full, in his declaration memorializing Dr. Brown's alleged comments during this appointment, Boyce states:

> Approximately Oct 6, 2011 Defendant Michelle Brown provided plaintiff some dental care. However plaintiff asked for pain medication for his pain Brown denied plaintiffs request for meds, stating your mouth deserve to hurt you sent that big black ugly professor clump officer back here trying to get you emergency

receive any pain medication, he states that any prescription medication would be noted in a patient's file and that medical records do not show that he received any medication during this appointment.  (*Id.*; R.176-2, Boyce Dep., pp. 98-99 (acknowledging that if he had received medication during a dental appointment, it would be documented in the written treatment notes).)

Dr. Brown denies that she spoke with a correctional officer about Boyce's complaints of dental pain or refused to see Boyce in September 2011.  (R. 176-3, Brown Decl., at Ex. B ¶ 8.)  In addition, she denies that she called Boyce a clown or told him that he deserved to be in pain.  (*Id.* ¶ 11.)  The October 6, 2011 dental appointment was the last time Dr. Brown provided dental care to Boyce or had any contact with him, as her employment as a dentist at Stateville ended on November 16, 2011.  (R. 176, Carter, Kelly and Brown's Stmt. Facts,  ¶¶ 21, 24.)

### 3.    Dr. Carter

Boyce's claim against Dr. Carter is based on Dr. Carter's failure to refer him to a specialist or prescribe pain medication, as well as Dr. Carter's "derogatory comments."  (R. 176-2, Boyce Dep., p. 47.)  Dr. Carter did not provide any direct medical care to Boyce.  On May 10, 2012, Dr. Carter left his position as Stateville's medical director.  (R. 176, Carter, Kelly and Brown's Stmt. Facts  ¶ 29.)  After this time, he did not have any contact with Boyce.

---

dental care.  I heard he dresses up like a clown for kids and exmilitary you need to work for him because your both clowns just like him.  Dentist Brown intentionally put unsterilized dental equipment in plaintiffs mouth.  This was deliberately done to cause pain.  See medical records attached prescribe medication is registered in a patients file. Its no enters for Brown giving plaintiff no meds see exhibits attached thereto 17, 71 response 3.

(R. 197, Boyce Decl., ¶ 10.)

### 4. Dr. Kelly

Boyce had an appointment with Dr. Kelly on October 11, 2011, because Boyce was having issues with depression. (R. 176, Carter, Kelly and Brown's Stmt. Facts, ¶ 39; (R. 198, Dr. Kelly's Progress Notes, Ex. 187.) Dr. Kelly's treatment notes are difficult to read due to the use of abbreviations and poor copy quality. (R. 198, Dr. Kelly's Progress Notes, Ex. 187.) Among other things, however, they reflect that during the October 11th session, Boyce told Dr. Kelly that he had seen a dentist and that Boyce "loudly yelled to write that he had been waiting to be seen before [the therapy] session." (*Id.*)

### C. Exhaustion

Dr. Carter, Dr. Kelly, Dr. Mitchell, and Dr. Brown assert that Boyce failed to exhaust his administrative remedies regarding the claims raised in this action. In support, they point to a declaration from Thomas Keen, that is attached as Exhibit D to Dr. Mitchell's Rule 56.1 statement and Exhibit I to Carter, Kelly and Brown's Rule 56.1 statement. Keen is a chairperson with IDOC's Office of Inmate Issues. (R. 176-10, Keen Decl., ¶ 1.) In this role, Keen reviews and responds to inmate grievances. (*Id.*) He is assigned to handle grievances filed by Boyce. (*Id.*)

As Keen explained, an inmate may request that a grievance be handled on an emergency basis by forwarding it directly to a facility's Chief Administrative Officer ("CAO") instead of a counselor or grievance officer. (*Id.* ¶ 12.) If the CAO decides that the grievance is not an emergency, the inmate may appeal that decision to the Administrative Review Board ("ARB"). (*Id.* ¶¶ 12, 15-18.) Any such appeal must be accompanied by the CAO's response. (*Id.* ¶¶ 15, 17.) If the inmate follows this procedure properly, the ARB will consider his appeal and submit

a written report with its findings and recommendations to the Director or his designee. (*Id.* ¶ 18.)  Once the Director makes a final decision, the claim is administratively exhausted.  (*Id.* ¶ 19.)

Keen states that in response to a request from defense counsel, he searched IDOC's records for grievances filed by Boyce about dental issues.  (*Id.* ¶ 20.)  He found "several grievances related to inadequate dental care" at the ARB level.[7]  (*Id.* ¶ 21.)  According to Keen, Boyce did not perfect his appeal to the ARB because he did not provide documentation required by 20 Ill. Admin. Code § 504.850(a) and (b) so Boyce could not have received a final ruling from the Director on his dental grievances.  (*Id.* ¶ 21.)

In response, Boyce contends that he exhausted his administrative remedies as to Dr. Mitchell, Dr. Carter, Dr. Kelly, and Dr. Brown by submitting emergency grievances about his dental care.  In support, he points to numerous grievances that he has attached as exhibits to his response to Dr. Carter, Dr. Kelly, and Dr. Brown's motion for summary judgment. (R. 198.)  The attached grievances have the following original submission dates:

- August 25, 2011 (*Id.*, Ex. 10, duplicated by Ex. 43)
- Illegible but rejected as a non-emergency on August 8, 2012 (*Id.*, Ex. 11)
- October 27, 2011 (*Id.*, Ex. 58)
- November 27, 2011 (*Id.*, Ex. 32)
- November 28, 2011 (*Id.*, Ex. 31)
- May 7, 2012 (*Id.*, Ex. 49)
- September 15, 2012 (*Id.*, Ex. 4)
- July 5, 2013 (*Id.*, Ex. 37)
- July 28, 2013 (*Id.*, Ex. 38)

---

[7] Dr. Mitchell states that Keen's search found "no [dental] grievances." (R. 179, Mitchell's Stmt. Facts, ¶ 31.)  This is an inaccurate statement as Keen stated that he found some dental grievances but believes they were not exhausted.  The Court will not consider this paragraph of Dr. Mitchell's statement of facts, as it does not accurately reflect the underlying evidence.  *See Ostergren v. Vill. of Oak Lawn*, 125 F. Supp. 2d 312, 318 n.9 (N.D. Ill. 2000).

- November 12, 2013 (*Id.*, Ex. 137)

The CAO did not find that any of these grievances, most of which were styled as emergencies, were in fact emergencies. Boyce appealed the denial of many of his "emergency" grievances to the ARB, which rejected them due to a lack of required documentation or timeliness. Boyce does not address the ARB's rejection of his grievances on procedural grounds or the fact that he did not designate all of his grievances as emergencies (which is the only way to bypass the normal grievance system). Instead, he argues that he exhausted all of his claims because he was not required to resubmit emergency grievances to his counselor after the CAO declined to treat them as emergencies. (R. 197, Boyce Decl., ¶ 29.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). *See also Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 712 (7th Cir. 2014). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted).

**ANALYSIS**

For the reasons detailed below, the Court finds that Boyce has failed to exhaust his administrative remedies with respect to his claims against Dr. Carter and Dr. Kelly, as well as his claim against Dr. Mitchell based on her alleged failure to respond to a purported 2009 complaint letter and his claim against Dr. Brown based on her alleged failure to respond to a purported September 2011 request for dental care. Thus, the Court grants Defendants' requests for summary judgment associated with these claims and dismisses the claims for failure to exhaust. The Court, in its discretion, elects to reach the merits of Boyce's remaining claims against Dr. Mitchell and Dr. Brown and grants the corresponding portions of their motions for summary judgment.

**I.      Exhaustion**

**A.      Overview of the Exhaustion Requirement**

To give corrections officials an opportunity to address complaints internally before a federal suit is initiated, prisoners must exhaust their administrative remedies before they file suit in federal court. 42 U.S.C. § 1997(e)(a); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The exhaustion requirement applies to deliberate indifference claims. *Porter*, 534 U.S. at 532. The defendants bear the burden of proving that a prisoner failed to exhaust a claim. *Turley v. Rednour*, 729 F.3d 645, 649-50 (7th Cir. 2013).

To exhaust administrative remedies, a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate generally begins the exhaustion process by speaking with a counselor. 20 Ill. Admin. Code § 504.810(a); *Tullis v. Shaw*, No. 14-CV-00070-JPG, 2014 WL

3809497, at *3 n.1 (S.D. Ill. Aug. 1, 2014). If the problem remains unresolved, the inmate must appeal to the Grievance Officer, who submits a recommendation to the warden, who is the facility's CAO. *Tullis*, 2014 WL 3809497, at *3 n.1 (citing 20 Ill. Admin. Code § 504.830(d)). If the inmate is dissatisfied with the response from the CAO, he must appeal to the ARB. *Id*. (citing 20 Ill. Admin. Code § 504.850(a)).

Alternatively, an inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 Ill. Admin. Code § 504.840. If the CAO determines there is a substantial risk of imminent personal injury or other serious or irreparable harm exists, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." *Id*. If a grievance styled as an emergency is denied because the CAO determines that it is not based on an emergency, the inmate may appeal to the ARB. 20 Ill. Admin. Code § 504.850(a).

Dismissal for failure to exhaust is without prejudice. *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005). This is the case even though exhaustion "most often is raised via summary judgment motion, so that the Court can consider evidence 'outside the pleadings,' such as affidavits, grievances, responses, appeals, and related documentation." *Collier v. Conrad*, No. 13-CV-0870-MJR- SCW, 2014 WL 3057387, at *2 n.1 (S.D. Ill. July 7, 2014) (quoting Fed. R. Civ. P. 12(d)). Nevertheless, the exhaustion requirement is not jurisdictional. *Fluker v. Cnty. of Kankakee*, 741 F.3d 787, 792-93 (7th Cir. 2013). Thus, "nothing . . . prohibits a district court's progression from the PLRA defense [of failure to exhaust] to the merits if the situation properly calls for it." *Id*. at 793. If discovery is closed, a defendant's motion for summary judgment is fully briefed on the merits, and the plaintiff has been afforded a "full and fair opportunity to

respond," considerations of judicial economy and finality may militate in favor of reaching the merits in the alternative despite the failure to exhaust. *Id.*

### B. Boyce's Efforts to Exhaust

#### 1. Dr. Carter

Boyce asserts that in January 2012, Dr. Carter ignored his in-person complaints about the care provided by Dr. Brown and refused to refer him to a specialist or prescribe pain medication. (R. 197, Boyce Decl., ¶¶ 13, 15.) Dr. Carter contends that he was unaware of Boyce's dental issues. Alternatively, he asserts that the record shows that when he was Stateville's medical director (July 25, 2011, through May 10, 2012), Boyce had six dental clinic appointments and thus received constitutionally adequate dental care.

The grievance closest in time after Boyce's alleged January 2012 interaction with Dr. Carter is dated May 7, 2012. (R. 198, Ex. 49.) The portion of this grievance directed at Dr. Carter asserts that Dr. Carter failed to respond to a complaint letter. (*Id.*) Even assuming that the May 7, 2012 grievance could serve to exhaust a claim arising in January 2012 (an issue which the Court need not reach), it does not challenge the alleged actions of Dr. Carter that are at issue in this case. Accordingly, the Court dismisses Boyce's claim against Dr. Carter based on his failure to exhaust. *See Fluker*, 741 F.3d at 792-93.

#### 2. Dr. Kelly

During an October 11, 2011 psychiatric appointment with Dr. Kelly, Boyce told Dr. Kelly that he was experiencing dental pain. Boyce claims that he asked Dr. Kelly to intervene with the dental staff on his behalf to no avail. Dr. Kelly argues that Boyce did not exhaust this claim. Alternatively, he contends that, as a psychiatrist, he could not provide dental care and

that he was, in any event, entitled to rely on the decisions made by the dental professionals who treated Boyce.

An inmate must submit a grievance within sixty days after he discovers an alleged problem. *See* 20 Ill. Admin. Code § 504.810(a); *Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014) (holding that a grievance filed seventy days after an injury was insufficient to exhaust the prisoner's administrative remedies). The sixtieth day after October 11, 2011, is December 10, 2011. Boyce filed three grievances within this time frame: (1) an October 27, 2011 grievance complaining about the alleged failure of unspecified dental staff to treat Boyce's cavities and gum disease and provide a prescription for pain medication and a referral to a specialist, and the use of unsterilized dental equipment (R. 198, Ex. 58); (2) a November 27, 2011 grievance complaining about alleged failure of "Stateville medical staff dental staff" to treat his gum disease and cavities (*Id.*, Ex. 32); and (3) a November 28, 2011 grievance complaining about Dr. Kelly's decision to forcibly administer psychotropic medication (*Id.*, Ex. 31). None of these correspond to Boyce's current claim against Dr. Kelly. Thus, the Court dismisses Boyce's claim against Dr. Kelly based on Boyce's failure to exhaust. *See Fluker*, 741 F.3d at 792-93.

### 3. Dental Care – Dr. Mitchell and Dr. Brown

#### a. Dr. Mitchell – Alleged Failure to Respond to Purported 2009 Letter

Boyce contends that on an unspecified date in 2009, he wrote Dr. Mitchell requesting treatment for cavities and "to see what was wrong with his gums," but that she failed to respond. (Dkt. 112, Sec. Am. Compl. ¶ 7; R. 176-2, Boyce Dep., p. 42.) Boyce filed his earliest dental grievance in 2011. As noted above, an inmate must submit grievances within sixty days after an inmate discovers an alleged problem. *See* 20 Ill. Admin. Code § 504.810(a). Grievances from

2011 and later about dental care cannot serve to exhaust a different dental care claim based on a purported failure to act in 2009. Thus, the Court dismisses Boyce's claim based on Dr. Mitchell's alleged failure to respond to his 2009 letter for failure to exhaust. *See Fluker*, 741 F.3d at 792-93.

> **b.** **Dr. Brown – Alleged Failure to Respond to Purported September 2011 Request for Dental Care Relayed by a Correctional Officer**

Boyce represents that, in September 2011, Dr. Brown refused to see him after a correctional officer relayed Boyce's complaints of pain to her. None of Boyce's grievances are within sixty days of this date or correspond to this specific complaint. Thus, the Court dismisses the claim against Dr. Brown based on her alleged failure to respond to a purported September 2011 request for dental care for failure to exhaust. *See Fluker*, 741 F.3d at 792-93.

> **c.** **The Remaining Claims Against Dr. Mitchell and Dr. Brown**

Dr. Mitchell and Dr. Brown ask the Court to dismiss Boyce's remaining claims against them based on his alleged failure to exhaust his administrative remedies. Specifically, they argue that Boyce did not exhaust all of his claims because, to the extent that he grieved an issue, he did not provide adequate documentation at the ARB level. The parties have completed discovery.

As demonstrated by the record, Boyce, a frequent litigator, vigorously pursued his claims through discovery and articulated his position during his two depositions and in his numerous filings. *See, e.g.*, R. 176-7, Mitchell's response to Boyce's interrogatories and requests to produce; R. 176-8, Boyce's answers to the Defendants' interrogatories; R. 176-2, Boyce's first deposition, R. 176-9, Boyce's second deposition. Boyce also filed a comprehensive set of

responses to the two summary judgment motions, including almost 200 pages of exhibits. (R. 198.) Accordingly, to conserve the resources of the Court and the parties and to achieve finality, the Court will reach the merits of Boyce's remaining claims against Dr. Mitchell and Dr. Brown based on dental care they provided, and will not delve into the parties' arguments about whether Boyce exhausted these claims. *See Fluker*, 741 F.3d at 792-93.

## II.     The Merits – Deliberate Indifference

Correctional officials may not act with deliberate indifference to an inmate's serious medical needs. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). Deliberate indifference has an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### A.     The Objective Element

A medical need is objectively serious when "the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). Defendants dispute that Boyce's assertions about his dental pain are sufficient to show that he had an objectively serious medical condition, asserting that gum disease and cavities are not life-threatening and none of the medical evidence shows that Boyce required emergency care. In contrast, Boyce claims that, starting in 2009, his cavities and gums were extremely painful and that "it felt like needles were being poked through his mouth" when he ate or drank. (R. 197, Boyce Decl., ¶ 6.)

Tooth decay and the resulting dental pain can rise to the level of a serious medical need. *Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Based on the parties' divergent views about the severity of Boyce's pain, a material issue of disputed fact precludes summary judgment as to the objective prong.

### B.      The Subjective Element

With respect to the subjective component of the deliberate indifference test, a plaintiff must establish that the defendant in question was aware of and consciously disregarded his medical need. *See Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04. "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). In other words, "[d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (internal citations omitted).

According to the Supreme Court, deliberate indifference is comparable to criminal recklessness. *Farmer*, 511 U.S. at 837. It encompasses conduct such as the refusal of effective treatment, *see Fields v. Smith*, 653 F.3d 550, 556 (7th Cir. 2011), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards, *see Roe*, 631 F.3d at 857. Neither medical malpractice nor a mere disagreement with a doctor's medical judgment, however, amounts to deliberate indifference. *See Holloway*, 700 F.3d at 1073; *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) ("Negligence – even gross negligence – is insufficient to meet this standard").

### 1. Dr. Mitchell

Boyce claims that, in February of 2012, Dr. Mitchell failed to address his complaints of pain adequately and did not prescribe pain medication that he believed was necessary.  He also claims that she was deliberately indifferent to his serious dental needs because she did not order IDOC to bring him to appointments when he was in disciplinary segregation or when the prison was on lockdown.

In contrast, Dr. Mitchell argues that the record shows that she provided extensive dental care to Boyce for more than two years for multiple non-emergency issues.  Between February 2011 and August 2013, she scheduled Boyce for fifteen dental appointments, and although his placement in disciplinary segregation and prison lock-downs prevented him from appearing at all of these appointments, he received dental treatment from her or pursuant to her direction nine times.  This treatment included the filling of multiple cavities during a series of appointments, a surgical extraction, two cleanings, X-rays, a referral to the medical clinic following Boyce's complaints about pain and sores during a dental clinic appointment, polishing of his new fillings, and a final dental appointment to evaluate him and determine if his dental work could be certified as complete.

Prisoners are entitled to "adequate medical care," not "unqualified access to healthcare." *Holloway*, 700 F.3d at 1073 (internal quotations omitted).  There is no single appropriate way to practice medicine in prison.  *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).  Thus, medical professionals may choose from "a range of acceptable courses based on prevailing standards in the field."  *Id*.  Only treatment decisions that are "'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person

responsible actually did not base the decision on such a judgment'" can support a finding of deliberate indifference. *Holloway*, 700 F.3d at 1073 (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). In other words, a prisoner is not entitled to receive the treatment of his choice on demand.

Boyce has not identified any evidence demonstrating that Dr. Mitchell's dental treatment or her classification of his dental issues as routine were substantial departures from accepted professional standards. *See Holloway*, 700 F.3d at 1073; *Williams*, 2012 WL 666787, at *7 (granting summary judgment to defendants based on a fully developed record regarding treatment for plaintiff's diabetes). Moreover, while Boyce criticizes Dr. Mitchell for not calling him to the dental clinic during a facility lock down or while he was in segregation for treatment of what he describes as dental emergencies, Boyce concedes that he would defer to a dentist to determine what conditions require emergency care.

Boyce's claim that Dr. Mitchell told him, "I'm not gonna give you pain pills or fillings because when you X-ray a patient it's a form of treatment," (R. 122, Sec. Am. Compl., ¶ 22), does not affect this conclusion. The assertion that Dr. Mitchell told Boyce that she would not fill any cavities conflicts with undisputed evidence showing that Dr. Mitchell did so multiple times. Moreover, although Boyce has provided lengthy explanations about why he believes Dr. Mitchell's care was inadequate, he makes only general assertions about the lack of prescription oral pain medication and, as noted above, a prisoner does not have a constitutional right to the medication of his choice upon demand. *See* R. 176-2, Boyce Dep., p. 117 (criticizing Dr. Mitchell's treatment and claiming that she was "supposed to give [him] pain medication upon asking for it for the pain [he] said [he] was in"); R. 193, Boyce's Opp'n to Kelly, Carter, and

Brown's Memorandum of Law, p.5) (describing Dr. Mitchell's care as "downright bogus").

Thus, Dr. Mitchell is entitled to summary judgment on Boyce's claim that she violated the

Eighth Amendment when she provided dental care to him.

### 2. Dr. Brown

As with Dr. Mitchell, Boyce's claims against Dr. Brown include a contention that she

failed to provide him with pain medication.  Wiith respect to Dr. Brown, however, Boyce points

to a specific instance where a lack of medication allegedly violated the Eighth Amendment.

Boyce alleges that during an October 6, 2011 dental appointment, Dr. Brown filled cavities but

refused to administer medication during the procedure, causing him to experience severe pain.

He also alleges that Dr. Brown called him a "clown" and told him that "[his] mouth deserve[d] to

hurt" because he had previously asked her to provide emergency dental care.  (R. 197, Boyce

Decl., ¶ 10.)  The Court will assume, without deciding, that filling the number and type of

cavities Boyce had without anesthesia causes pain that rises to the level of an objectively serious

medical condition.

According to Dr. Brown, she administered two carpules of 2% Lidocaine when

performing the October 6, 2011 dental work.  (R. 176, Carter, Kelly and Brown's Stmt. Facts

¶ 19.)  Her treatment notes also reflect that she did so.  (R. 176-3, Brown Decl., at Ex. A attached

to Ex. B.)  In support of his claim that Dr. Brown refused to give him any pain medication during

this appointment to cause him to suffer needlessly, Boyce directs the Court's attention to "17, 71

response 3."  (R. 197, Boyce Decl., ¶ 10.)  These citations appear to correspond to the

voluminous exhibits Boyce submitted in opposition to Dr. Carter, Dr. Kelly, and Dr. Brown's

motion for summary judgment.  (R. 198.)

Exhibit 17 is the first page of the progress notes for Boyce's dental care and is a duplicate of the progress notes attached as Exhibit A to Dr. Brown's declaration. (R. 176-3, Brown Decl., at Ex. A attached to Ex. B.) Contrary to Boyce's characterization of the progress notes, they list 2% Lidocaine as part of Boyce's appointment.

"71 response 3" is Exhibit 71 to the exhibits Boyce submitted in opposition to Dr. Carter, Dr. Kelly, and Dr. Brown's motion for summary judgment, which consists of Dr. Mitchell's response to Boyce's interrogatory number three. (R. 198, Ex. 71.) In that interrogatory, Boyce asked Dr. Mitchell, "Who maintains the log books of pain medication when it's given to patients for dental needs? Produce Documents." (*Id.*) Dr. Mitchell responded that "a record of any prescription medication that an offender receives in the dental clinic is noted on their dental chart into each offender's medical records." (*Id.*)

Consistent with Dr. Mitchell's statement, in his declaration and during his deposition, Boyce testified that any medication administered during a dental appointment would be noted in a patient's file. *See* R. 197, Boyce Decl., ¶ 10 ("prescribe[d] medication is registered in a patient[']s file"); R.176-2, Boyce Dep., pp. 98-99 (acknowledging that if he had received medication during any of his dental appointments, it would be documented "due to the fact it would have been wrote in [his] medical file.") Thus, Boyce's assertion that he did not receive any pain medication during the October 11, 2011 appointment is directly contradicted by: (1) Dr. Brown's deposition testimony; (2) Dr. Brown's progress notes reflecting 2% Lidocaine; and (3) Dr. Mitchell's statement that patients' medication is memorialized in their medical records. In addition – critically – it is directly contradicted by Boyce's own repeated

acknowledgment that if he had received medication during a dental appointment, it would be noted in his medical records.[8]

The rule that at the summary judgment stage, facts must be viewed in the light most favorable to the non-moving party only applies if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). A party opposing summary judgment may rely on his own deposition testimony as well as affidavits based on his personal knowledge. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). Nevertheless, the Supreme Court has emphasized that a party opposing summary judgment must do more than identify "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (footnote omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. at 380-81 (holding that the "[r]espondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape").

---

[8] It is possible that the inconsistency between Boyce's claim that Dr. Brown did not administer any medication, his assertions that all medication would be documented in inmate medical files, and the 2% Lidocaine entry in the progress notes for the October 11, 2011 appointment could be due to Boyce's belief that, in addition to the Lidocaine, he should have received oral pain medication or, perhaps, oral sedation. Although the Court will construe Boyce's pleadings liberally given his pro se status, it will not engage in speculation or craft arguments on his behalf. In any event, nothing in the record indicates that a dentist's use of 2% Lidocaine as an anesthetic when filling cavities represents a substantial departure from accepted professional standards. *See Holloway*, 700 F.3d at 1073.

The Court must, therefore, determine if Boyce's summary judgment submissions are sufficient to create more than a metaphysical doubt. In addressing this question, the Court finds the decision in *Flake v. Peck*, No. 9:12-CV-00517 MAD, 2014 WL 1289582 (N.D.N.Y. Mar. 31, 2014), persuasive. In *Flake*, an inmate filed suit claiming, among other things, that correctional officials violated his constitutional rights by turning the water off in his cell. *Id*. at \*21. The inmate testified at a deposition that he had never flooded his cell, but unit log books showed that the prison turned off his water because he had done so. *Id*.

The *Flake* court held that the inmate's testimony denying that he flooded his cell failed to defeat the defendants' summary judgment motion since he also did not "contest the accuracy or veracity of the log book entry that clearly shows that [his] water was turned off due to 'inmate flooding cell.'" *Id*. at \*21-22 (citing *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine" if a jury could reasonably find for the plaintiff based on a genuine issue of material fact "without making some assessment of the plaintiff's account"); *see also Inesti v. Hogan*, No. 11 Civ. 2596, 2013 WL 791540, at \*23 & n.39 (S.D.N.Y. Mar. 5, 2013) (holding that although it is unlikely that prison logs would reflect the wrongful denial of a constitutional right, defendants were entitled to summary judgment when plaintiff did not contest the accuracy of logs documenting his meals, access to showers, recreational time, and medication), Rep't Rec. adopted by 2013 WL 5677046 (S.D.N.Y. Sept. 30, 2013).

Boyce, like the prisoner in *Flake*, has not challenged the accuracy of the dental records associated with Dr. Brown's treatment.[9] Instead, he incorrectly claims that the records do not reflect that Dr. Brown gave him pain medication during the October 11, 2011 appointment. His opposition to Dr. Brown's motion for summary judgment, therefore, consists of two contradictory parts. On the one hand, he contends that during the October 11, 2011 appointment, Dr. Brown filled cavities without any pain medication and made derogatory statements to him. On the other hand, he has specifically, affirmatively, and repeatedly testified that if he had received medication, it would have been documented in his dental records and claims that the records do not reflect that he received pain medication. The dental records reflect the use of 2% Lidocaine and Boyce does not dispute Dr. Brown's testimony that this medication is a prescription local anesthetic commonly used in dental procedures. (R. 176, Carter, Kelly and Brown's Stmt. Facts ¶ 20).

Given his contradictory testimony that he did not receive any medication but that, if he had, it would be in his medical records, and the existence of uncontested documentary evidence reflecting the administration of anesthesia, no reasonable jury could accept Boyce's claim that Dr. Brown did not administer any pain medication. *See Scott*, 550 U.S. at 379-81. Thus, Dr. Brown's motion for summary judgment is granted.

---

[9] In contrast, in his declaration, Boyce asserts that Dr. Mitchell "lie[d] in [his] medical chart" by saying he missed appointments because he was in segregation and, on one occasion, incorrectly represented that he was in segregation when he was in the hospital for an unrelated reason and complained about a broken tooth . (R. 197, Boyce Decl., ¶¶ 22, 28.) The Court has already found that Boyce's arguments about missed appointments due to placement in segregation and the alleged hospitalization where Boyce complained about a broken tooth are unavailing. For present purposes, however, the critical point is that Boyce has not made similar claims of inaccuracy relating to his medical records memorializing treatment provided by Dr. Brown.

**CONCLUSION**

For these reasons, Defendants' motions for summary judgment [174 and 177] are granted. Specifically, Boyce's claims against Dr. Carter and Dr. Kelly, his claim against Dr. Mitchell based on her alleged failure to respond to a purported 2009 complaint letter, and his claim against Dr. Brown based on her alleged failure to respond to a purported September 2011 request for dental care are dismissed due to Boyce's failure to exhaust his administrative remedies. The Court grants summary judgment to Dr. Mitchell and Dr. Brown on the merits as to Boyce's other claims against them. The Clerk is directed to terminate defendant "John Doe Dentist" and "Dr. Brown" as defendants. As this opinion resolves the remaining claims in this action, the Clerk is also directed to enter a final judgment pursuant to Fed. R. Civ. P. 58.

If Boyce wishes to appeal, he may file a notice of appeal within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to proceed in forma pauperis on appeal should set forth the issues Boyce plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the appeal is found to be non-meritorious, Boyce may also be assessed a "strike" under 28 U.S.C. § 1915(g). Boyce is advised that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.

ENTERED:

Dated: September 8, 2014

AMY J. ST. EVE
United States District Court Judge